JOURNAL ENTRY AND OPINION
{¶ 1} Appellant Darryl Byrd appeals the trial court's decision classifying him as a habitual sexual offender. Byrd assigns the following errors for our review:
 "I. R.C. 2950.09 does not provide a meaningful distinction as to whether a habitual offender should or should not be subject to community notification, thus causing the community notification provision to be void for vagueness."
 "II. The presumption in favor of community notification cannot be applied to Mr. Byrd because he committed his offenses prior to the enactment of the presumption." *Page 2 
 "III. Mr. Byrd should not have been ordered to submit to community notification because there was insufficient evidence presented to justify the community notification requirement."
 "IV. Mr. Byrd cannot be a habitual sexual offender because he was convicted of all his sexually oriented offenses at the same time."
 {¶ 2} Having reviewed the record and pertinent law, we affirm the trial court's decision. The apposite facts follow.
 {¶ 3} The history of the case reveals that the Cuyahoga County Grand Jury indicted Byrd on two separate sexually oriented offense cases. On December 2, 1999, the grand jury indicted Byrd in case number CR-384406 for rape, rape with sexually violent specifications, felonious sexual penetration, gross sexual imposition, gross sexual imposition with sexually violent predator specifications, and abduction. On January 13, 2000, the grand jury indicted Byrd in case number CR-385990 for rape, forcible gross sexual imposition upon a minor, felonious sexual penetration upon a minor, and gross sexual imposition upon a minor.
 {¶ 4} In case number CR-385990, Byrd proceeded to a jury trial. In that case, the jury found Byrd guilty of two counts of rape and nine counts of felonious sexual penetration. In case number CR-384406, pursuant to a plea agreement with the State, Byrd pleaded guilty to one count of rape.
 {¶ 5} Prior to sentencing, the trial court held a classification hearing, pursuant to R.C. 2950.09, in case number CR-385990 and adjudicated Byrd a sexual predator. The trial court then sentenced Byrd to life imprisonment. In addition, the *Page 3 
trial court sentenced Byrd to a three-year prison term in case number CR-384406 to be served concurrently with the prison term in case number CR-385990.
 {¶ 6} Thereafter, Byrd appealed his conviction, sentence, and sexual predator classification. In State v. Byrd,[1] we affirmed Byrd's convictions and sentences. However, we found that at the time of the sentencing hearing, the trial court had failed to give Byrd notice of its intent to conduct a sexual predator hearing as required by R.C.2950.09(B)(1). Consequently, we reversed Byrd's sexual predator classification and remanded the case for a new hearing.[2]
 {¶ 7} On January 6, 2005, following our remand, the trial court conducted a hearing pursuant to R.C. 2950.09. At the close of the hearing, the trial court held that the State had failed to prove that Byrd was a sexual predator. The trial court also held that Byrd did not qualify as a habitual sexual offender. Ultimately, the trial court classified Byrd as a sexually oriented offender.
 {¶ 8} The State of Ohio appealed the trial court's decision classifying Byrd as a sexually oriented offender. In State v.Byrd,[3] we held that the trial court erred by failing to classify Byrd as a habitual sexual offender, as required by Ohio Rev. Code *Page 4 
Ann. § 2950.09(C)(2). The case was again remanded for the trial court to conduct another hearing pursuant to R.C. 2950.09.
 {¶ 9} On July 11, 2006, the trial court conducted a hearing and classified Byrd as a habitual sexual offender. The trial court also ordered that Byrd be subject to the community notification provision.
 R.C. 2950.09 Void for Vagueness {¶ 10} In the first assigned error, Byrd argues R.C. 2950.09 is void for vagueness because it fails to provide trial courts with meaningful guidance as to when to subject a habitual sexual offender to the community notification provision. We disagree.
 {¶ 11} In Grayned v. Rockford,[4] the United States Supreme Court set out the following guidelines for evaluating a void-for-vagueness claim:
 "Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application. * * *"[5] *Page 5 
 {¶ 12} Accordingly, when a statute is challenged under the due process doctrine of vagueness, a court must determine whether the enactment, (1) provides sufficient notice of its proscriptions, and (2) contains reasonably clear guidelines to prevent official arbitrariness or discrimination in its enforcement.[6]
 {¶ 13} The void-for-vagueness doctrine ensures that individuals can ascertain what the law requires of them.[7] In order to survive a void-for-vagueness challenge, the statute at issue must be written so that a person of common intelligence is able to determine what conduct is prohibited, and the statute must provide sufficient standards to prevent arbitrary and discriminatory enforcement.[8] A statute will not be declared void, however, merely because it could have been worded more precisely.[9] Mathematical precision has never been required.[10]
 {¶ 14} Moreover, a statute's certainty may be ascertained by application of commonly accepted tools of judicial construction, with courts indulging every *Page 6 
reasonable interpretation in favor of finding the statute constitutional.[11] Courts are often required to analyze statutes beyond their plain language. The courts must occasionally determine the appropriate standard of proof to apply in statutory actions in the absence of a legislative statement on the issue.[12] Once such judicial determinations are made, appellate review and stare decisis prevent arbitrary and discriminatory enforcement.[13]
 {¶ 15} R.C. 2950.09(C)(2)(b) provides in part:
 "After reviewing all testimony and evidence presented at the sexual predator hearing and the factors specified in division (B)(2) of this section, the court shall determine by clear and convincing evidence whether the offender is a sexual predator. If the court determines that the offender is not a sexual predator, it shall also determine whether the offender previously has been convicted of or pleaded guilty to a sexually oriented offense other than the offense in relation to which the hearing is being conducted."[14]
 {¶ 16} Upon making its determinations at the hearing, the court shall proceed as follows:
 "* * *
 "(ii) * * * If the court determines that the offender is not a sexual predator but that the offender previously has been convicted of or pleaded guilty *Page 7 
to a sexually oriented offense other than the offense in relation to which the hearing is being conducted, it shall include its determination that the offender is not a sexual predator but is a habitual sexual offender in the offender's institutional record, shall attach the determinations to the offender's sentence, shall specify that the determinations were pursuant to division (C) of this section, shall provide a copy of the determinations to the offender, to the prosecuting attorney, and to the department of rehabilitation and correction, and may impose a requirement that the offender be subject to the community notification provisions regarding the offender's place of residence that are contained in sections 2950.10 and 2950.11 of the Revised Code. The offender shall not be subject to those community notification provisions relative to the sexually oriented offense in question if the court does not so impose the requirement described in this division. If the court imposes those community notification provisions, the offender may appeal the judge's determination that the offender is a habitual sexual offender."[15]
 {¶ 17} Byrd asserts that this provision is unconstitutionally vague because the portion emphasized above provides no standard guiding the determination to impose community notification. We are not persuaded.
 {¶ 18} As noted by the Supreme Court of Ohio, R.C. 2950, as enacted by H.B. 180, established a new classification scheme for sexual offenders including (1) sexually oriented offender, (2) habitual sex offender, and (3) sexual predator.[16] A sexually oriented offender is one who has committed a "sexually oriented offense," as the term is defined in R.C.2950.01(D), but who does not fit into either the habitual *Page 8 
sex offender or sexual predator descriptions.[17] A "sexually oriented offender" is subject to registration and verification provisions,[18]
but not community notification provisions.[19] A sexual predator is defined as "a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses."[20] Community notification is mandatory for sexual predators.[21]
 {¶ 19} In the instant case, the trial court classified Byrd as a habitual sexual offender. Habitual sex offender is defined as "a person who is convicted of or pleads guilty to a sexually oriented offense and who previously has been convicted of or pleaded guilty to one or more sexually oriented offenses."[22] A habitual sex offender is unlike a sexually oriented offender because the offender has at least one prior sexually oriented offense conviction and is unlike a sexual predator because the General Assembly has not expressly defined the offender class by likelihood of *Page 9 
recidivism.[23] For this reason, the statute leaves to the judgment of the trial court whether community notification is appropriate as to the given offender.[24]
 {¶ 20} R.C. 2950.02(A) provides in pertinent part as follows:
 "(6) The release of information about sexual predators and habitual sex offenders to public agencies and the general public will further the governmental interests of public safety and public scrutiny of the criminal and mental health systems as long as the information released is rationally related to the furtherance of those goals."
 {¶ 21} In State v. Sanders,[25] the court addressed the appropriateness of community notification when it held as follows:
 "This discretion is not unlimited. The intent of the General Assembly in enacting H.B. 180 and as included in R.C. 2950.02(A) sets forth clear limits upon the trial court's power. R.C. 2950.02(A)(6) allows for the release of informa-tion about the habitual sex offender "as long as the information released is rationally related to the furtherance" of the goals of "public safety and public scrutiny of the criminal and mental health systems." Should the trial court impose community notification where the release of such information is not necessary to protect and inform the public, the trial court's order would exceed the purposes of R.C. Chapter 2950 and be void.
 "* * *
 "The decision of whether to impose community notification upon a habitual sexual offender involves issues significantly different from the decision regarding whether the offender is a sexual predator. R.C. 2950.09(B)(2) sets forth specific factors which the General Assembly has determined weigh heavily in sexual predator adjudications. The *Page 10 
decision to impose community notification upon a habitual sex offender does not involve such specific factors. Rather, it involves the weighing of a variety of interests including the offender's circumscribed right of privacy, the public interest in the efficient functioning of the government, the public safety, the public's right of access to and awareness of the criminal and mental health systems, and any risk of recidivism that the offender may pose. These interests are all included in the legislative determinations and intent. See R.C. 2950.02(A). Although R.C. 2950.09(C)(2)(b)(ii) may not explicitly set forth in its text specific factors for the trial court to consider when making its judgment, the statutory scheme of R.C. Chapter 2950 provides sufficient, clear guidance to the trial court."[26]
 {¶ 22} We have also held that R.C. 2950.09(C)(2)(b)(ii) provides clear guidance to the trial courts in determining when to impose community notification on a given defendant who has been classified as a habitual sexual offender.[27] We again hold that R.C.2950.09(C)(2)(b)(ii) is not void for vagueness. Consequently, we reject Byrd's assertion. Accordingly, we overrule the first assigned error.
 Community Notification and Ex Post Facto Laws {¶ 23} In the second assigned error, Byrd argues the presumption in favor of community notification, as applied to him, is a prohibitedex post facto law. We disagree. *Page 11 
 {¶ 24} Section 10, Article I of the United States Constitution states: "No State shall * * * pass any * * * ex post facto law * * *."[28]
The Ex Post Facto Clause bars the application of any law which inflicts a greater punishment for a crime than the law attached to the crime when it was committed.[29]
 {¶ 25} In State v. Williams,[30] the Supreme Court of Ohio stated: "In State v. Cook (1998), 83 Ohio St.3d 404, 700 N.E.2d 570, certiorari denied (1999), 525 U.S. 1182, 119 S.Ct. 1122, 143 L. Ed.2d 116, we held that R.C. 2950.09(B) is not a retroactive law in violation of Section28, Article II of the Ohio Constitution, and that R.C. Chapter 2950 is not an ex post facto law in violation of Section 10, Article I of the United States Constitution as applied to conduct occurring prior to the effective date of H.B. 180."[31]
 {¶ 26} In keeping with the holdings in Williams and Cook above, we conclude that the notification requirement, as applied to Byrd, did not violate the Ex Post Facto Clause. Accordingly, we overrule the second assigned error.
 Lack of Justification for Community NotificationRequirement *Page 12 {¶ 27} In the third assigned error, Byrd argues there was insufficient evidence to support the imposition of community notification requirement. We disagree.
 {¶ 28} After an offender is classified as a habitual sexual offender, the court must make the determination whether or not to impose the community notification requirement.[32] When the victims of a sexually oriented offense are under 18 years of age, there is a presumption that community notification is necessary to comply with the determinations, findings, and declarations of the General Assembly regarding sex offenders.[33]
 {¶ 29} In the case at bar, the victim was Byrd's niece, who was ten years old when the sexual offenses took place. Therefore, according to the statute, there is a presumption for community notification in this instance. The trial court specifically found that because of the victim's young age, notification was crucial. The trial court also noted that Byrd had committed two rapes in one case and one rape in the other case.
 {¶ 30} We conclude on the evidence before us that Byrd failed to overcome the presumption in favor of community notification. The trial court properly imposed the community notification on Byrd. Accordingly, we overrule the third assigned error.
 Habitual Sexual Offender Classification *Page 13 {¶ 31} In the fourth assigned error, Byrd argues the trial court erred when it classified him as a habitual sexual offender because his convictions in two separate cases were entered at the same time. We disagree.
 {¶ 32} Initially, we note that in the recent Ohio Supreme Court's decision in State v. Wilson,[34] the court held that the sex-offender-classification proceedings under R.C. Chapter 2950 are civil in nature and that a court of appeals must apply the civil manifest-weight-of-the-evidence standard in its review of the trial court's findings. Under this standard, a court of appeals must affirm the trial court's determination if it is supported by some competent, credible evidence.[35] With this precept in mind, we proceed to address the fourth assigned error.
 {¶ 33} In State v. Byrd,[36] in rejecting this assertion we noted:
 {¶ 34} "Here, there are two separate cases that proceeded to two different resolutions; one resulted in a jury verdict, and one concluded with a guilty plea. There were also two different victims. Most importantly, both convictions were prior to the original classification hearing. Therefore, the lower court in this case erred by *Page 14 
failing to classify Byrd as a habitual sexual offender, and the state's assignment of error is sustained."[37]
 {¶ 35} Nonetheless, Byrd cites State v. West[38] in support of this assertion. However, West is distinguishable from the instant case. The First District Court of Appeals reversed West's classification as a habitual sexual offender because he had not previously been convicted of a sexually oriented offense. The court noted:
 "The record demonstrates that the trial court determined at the sexual-predator hearing that West was a habitual sexual offender solely because he had pleaded guilty to multiple charges of sexual battery in the same case, not because he had previously been convicted of or pleaded guilty to a sexual offense. Because the trial court did not base its determination on the criteria outlined in R.C. 2950.09(E), and because we find no evidence in the record indicating that West had previously been convicted of or pleaded guilty to a sexual offense, we conclude that the trial court erred in finding that West was a habitual sexual offender."[39]
 {¶ 36} Here, as previously noted, Byrd was convicted for sexual offenses against two separate victims in two separate cases. Consequently, and in keeping with the statute, the trial court correctly classified Byrd as a habitual sexual offender. The trial court's decision was supported by competent, credible evidence. Accordingly, we overrule the fourth assigned error. *Page 15 
Judgment affirmed.
It is ordered that appellee recover from appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
FRANK D. CELEBREZZE, JR., A.J., and MELODY J. STEWART, J., CONCUR
[1] Cuyahoga App. No. 79661, 2002-Ohio-661.
[2] Id.
[3] Cuyahoga App. No. 85868, 2005-Ohio-5558.
[4] (1972), 408 U.S. 104, 108-109, 92 S.Ct. 2294, 2298-2299,33 L.Ed.2d 222, 227-228.
[5] Id.
[6] Smith v. Goguen (1974), 415 U.S. 566, 94 S.Ct. 1242,39 L.Ed.2d 605.
[7] State v. Anderson (1991), 57 Ohio St.3d 168, 171.
[8] State v. Williams (2000), 88 Ohio St.3d 513, citing Chicago v.Morales (1999), 527 U.S. 41, 56-57, 119 S.Ct. 1849, 1859,144 L.Ed.2d 67, 80; see, also, State ex rel. Rear Door Bookstore v. Tenth Dist.Court of Appeals (1992), 63 Ohio St.3d 354, 358.
[9] See Roth v. United States (1957), 354 U.S. 476, 491,77 S.Ct. 1304, 1312, 1 L.Ed.2d 1498, 1510-1511.
[10] See Boyce Motor Lines v. United States (1952), 342 U.S. 337, 340,72 S.Ct. 329, 330-331, 96 L.Ed. 367, 371.
[11] Perez v. Cleveland (1997), 78 Ohio St. 3d 376, 378, citingState v. Dorso (1983), 4 Ohio St.3d 60, 61, 446 N.E.2d 449.
[12] Perez at 379, citing State v. Walden (1989), 47 Ohio St.3d 47,53.
[13] Id.
[14] State v. Sanders (May 15, 2000), 12th Dist. No. CA99-07-069.
[15] Id.
[16] State v. Cook (1998), 83 Ohio St.3d 404, 407.
[17] Id.
[18] R.C. 2950.03-.07.
[19] R.C. 2950.10-.11.
[20] R.C. 2950.01(E).
[21] R.C. 2950.10 — .11.
[22] R.C. 2950.01(B).
[23] Sanders, supra.
[24] Id. See also R.C. 2950.09(C)(2)(b)(ii).
[25] (May 15, 2000), 12th Dist. No. CA99-07-069.
[26] Id. at 4-5.
[27] See State v. Gooden, Cuyahoga App. No. 81320, 2003-Ohio-2864 andState v. Griffin, Cuyahoga App. No. 80499, 2002-Ohio-4288.
[28] State v. Jones (May 6, 1998), 4th Dist. No. 97 CA 42.
[29] Calder v. Bull (1798), 3 U.S. (3 Dall.) 386, 390-92, 1 L.Ed. 648;Lynce v. Mathis (1997), 519 U.S. 433, 117 S.Ct. 891, 895,137 L.Ed. 2d 63.
[30] (2000), 88 Ohio St.3d 513.
[31] Id.
[32] State v. Tenbrook, Cuyahoga App. No. 87675, 2006-Ohio-6026.
[33] Id. See also R.C. 2950.09(E)(2).
[34] 113 Ohio St.3d 382, 2007-Ohio-2202.
[35] Id.
[36] Cuyahoga App. No. 85868, 2005-Ohio-5558.
[37] Id.
[38] (1999), 134 Ohio App.3d 45.
[39] Id. *Page 1